IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

––––––––––––––––––––

MARCIA MCKEE, the surviving mother of GRANT QUINN MCKEE,
both individually and on behalf of all statutory beneficiaries of GRANT
QUINN MCKEE, deceased, *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, a public entity; and the ARIZONA STATE
FORESTRY DIVISION, a public entity, *Defendants/Appellees*.

No. 1 CA-CV 15-0800
FILED 12-30-16

––––––––––––––––––––

Appeal from the Superior Court in Maricopa County
Nos. CV2014-009068, CV2014-009069 and CV2014-009070
(Consolidated)
The Honorable J. Richard Gama, Judge

**AFFIRMED**

––––––––––––––––––––

COUNSEL

Knapp & Roberts PC, Scottsdale
By Craig A. Knapp, Dana R. Roberts and David L. Abney
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Brock J. Heathcotte and Daniel P. Schaack
*Co-Counsel for Defendants/Appellees*

and

Stinson Leonard Street LLP, Phoenix,
By Michael L. Parrish
*Co-Counsel for Defendants/Appellees*

## OPINION

Presiding Judge Andrew W. Gould delivered the opinion of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

**G O U L D**, Judge:

**¶1**      Marcia McKee ("Appellant") appeals from the superior court's order dismissing her claims for wrongful death and intentional infliction of emotional distress.  Appellant argues the court erred in concluding that her son was an employee of the State of Arizona and the Arizona State Forestry Division and, as a result, her claim was barred by the workers' compensation statutes' exclusive remedy provision.  Appellant also contends she stated a claim for intentional infliction of emotional distress and she should be permitted to sue both the State and the State Forestry Division.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**      Beginning in 1997, the State Forestry Division and the Prescott Fire Department entered into a cooperative intergovernmental agreement ("IGA") whereby the two agencies agreed to collaborate their resources to provide fire protection to the Prescott community and surrounding wilderness areas.  For his work as a member of the Granite Mountain Interagency Hotshot Crew, Grant McKee ("McKee") was employed by the Prescott Fire Department.  However, because McKee worked within the jurisdictional boundaries of the State Forestry Division pursuant to the IGA, he was also deemed an employee of the State.  Ariz. Rev. Stat. ("A.R.S.") § 23-1022(D) (West 2016).[1]

**¶3**      On June 30, 2013, Appellant's son, McKee, was a member of the Granite Mountain Interagency Hotshot Crew who died while bravely fighting the Yarnell Hill Fire.  At the time of McKee's death, he was unmarried, had no children or dependents, and he was not contributing to the support of Appellant.

---

[1]      We cite to the current version of the statute absent material revisions.

**¶4**　　　　Appellant filed a lawsuit against the State and the State Forestry Division seeking damages for wrongful death and intentional infliction of emotional distress.[2]　The State filed a motion to dismiss Appellant's claims, arguing that her wrongful death claim was barred by the workers' compensation exclusive remedy provision and the firefighter's rule, that she failed to state a claim for intentional infliction of emotional distress, and that the State Forestry Division was a nonjural entity that could not be sued.　The court granted the motion and dismissed Appellant's claims with prejudice.　Appellant timely appealed.

## DISCUSSION

### I.　Standard of Review

**¶5**　　　　We review the superior court's dismissal of a complaint under Rule 12(b)(6) de novo.　*Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). We review issues of statutory interpretation de novo.　*City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178, ¶ 5 (App. 2008).　In addition, whether Appellant's wrongful death claim is barred by the exclusive remedy prescribed in the Arizona workers' compensation system is a legal question subject to de novo review.　*Mitchell v. Gamble*, 207 Ariz. 364, 367, ¶ 7 (App. 2004).

### II.　Wrongful Death

**¶6**　　　　Appellant concedes that if McKee was an employee of the State at the time of his death, her ability to sue for wrongful death is limited by Arizona's workers' compensation exclusive remedy provision. However, as discussed more fully below, Appellant argues that McKee was not a State employee at the time of his death, and therefore not subject to the exclusive remedy provision.

#### A.　Workers' Compensation: Exclusive Remedy

**¶7**　　　　Generally, a plaintiff may bring a wrongful death claim as an "independent claim for damages sustained by the decedent's survivors." *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 549 (App. 1997); *see also Vasquez v. State*, 220 Ariz. 304, 310, ¶ 16 (App. 2008).　However, the right to bring a wrongful death action exists only if the decedent would have been able to maintain an action for damages if death had not ensued.　A.R.S. § 12-611; *Diaz*, 190 Ariz. at 549 (stating that "plaintiffs must still come within the

---

[2]　　　　Appellant's case was consolidated with two other similar cases; however, all other plaintiffs settled their claims against the State.

terms of the wrongful death statute"). Thus, a claim filed by a plaintiff in a wrongful death case is subject to the same defenses as could have been asserted against the decedent if he had lived. *Diaz*, 190 Ariz. at 549.

¶8　　　　In Arizona, workers' compensation is the exclusive remedy for compensation against an employer for the work-related injury or death of an employee. A.R.S. § 23-1022(A). An employee can elect to maintain an action at law for damages in lieu of receiving workers' compensation only where an employer's wilful misconduct caused the employee's injury or death. *Id.* An employee of a public agency working under the jurisdiction and control of another public agency pursuant to an IGA is considered an employee of both agencies for purposes of the exclusive remedy provision of workers' compensation. A.R.S. § 23-1022(D); *Callan v. Bernini*, 213 Ariz. 257, 260, ¶ 12 (App. 2006) ("[A]n employee of a party to an IGA who is injured in the course of employment may not seek damages in a common law tort action from another party to the IGA.").

### B.　　Compliance with A.R.S. § 11-952

¶9　　　　Appellant argues the IGA between the City of Prescott and the State Forestry Division was not effective because it was not approved in compliance with A.R.S. § 11-952(F). Appellant argues that McKee remained an employee of the City of Prescott, and was never an employee of the State, because the resolution purporting to approve the IGA did not comply with A.R.S. § 11-952(F). This statute provides:

> [a]ppropriate action by ordinance or resolution . . . approving or extending the duration of the agreement or contract shall be necessary before any such agreement, contract or extension may be filed or become effective.

¶10　　　Appellant interprets A.R.S. § 11-952(F) as requiring an agency to specifically approve the duration of an IGA. Here, Appellant claims the IGA is ineffective because the City's resolution does not expressly approve the duration of the IGA. As a result, she argues McKee never became an employee of the State.

¶11　　　Our goal in interpreting a statute is to "ascertain the legislature's intent." *Lyons v. State Bd. of Equalization*, 209 Ariz. 497, 499, ¶ 8 (App. 2005). To do so "we look first to the [statute's] language and will ascribe plain meaning to its terms unless the legislature assigned a special meaning to one or more terms." *Id.* (internal citations omitted). "'We construe the statute as a whole, and consider its context[.]'" *People's Choice TV Corp., Inc. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7 (2002) (*quoting State ex*

*rel. Ariz. Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.,* 187 Ariz. 242, 247 (App. 1996)). "[W]e will not interpret a statute in such a way as to produce 'absurd results,' or 'render [any word, phrase, clause, or sentence] superfluous, void, insignificant, redundant or contradictory.'" *TDB Tucson Group, L.L.C. v. City of Tucson*, 228 Ariz. 120, 123, ¶ 9 (App. 2011) (*quoting Patterson v. Maricopa Cty. Sheriff's Office,* 177 Ariz. 153, 156 (App. 1993)).

¶12 We find no textual basis for Appellant's reading of A.R.S. § 11-952(F). Section 11-952 addresses agreements or contracts that two or more public agencies can enter for services or for joint or cooperative action. A.R.S. § 11-952(A). Under canons of statutory construction, we read the "or" separating "approving" and "extending the duration" to be disjunctive. *State v. Piotrowski*, 233 Ariz. 595, 598, ¶ 16 (App. 2014). Thus, we read the language of subsection F as simply requiring appropriate agency action approving (1) the agreement, or (2) the duration of any extension of the agreement.

¶13 This construction is also consistent with the context of the statute. In addition to duration, an IGA must specify a number of matters, including the purpose, financing/budget, and methods to be employed in accomplishing its purpose. A.R.S. § 11-952(B)(1)-(4). However, absent from subsection F is any language requiring that a public body expressly and separately approve any of these requirements. Additionally, A.R.S. § 11-952(G) provides that an IGA may be extended as many times as the public agencies wish but the "extension may not exceed the duration of the previous agreement." Reading section F and G together, the initial IGA must be approved by a public agency, and if it has a finite duration, and the agencies wish to extend the agreement beyond its initial duration, any extension must be approved in the same manner as the initial IGA.

¶14 Here, the IGA between Prescott and the State Forestry Division directs that it "will continue in force from year to year unless terminated by either party." The resolution passed by the City of Prescott approves all the terms of the IGA, including its duration. Because the IGA has a perpetual duration, there is no need for the City to pass a resolution "extending the duration of the agreement." A.R.S. § 11-952(F).

¶15 Accordingly, the resolution approving the IGA complies with A.R.S. § 11-952. The IGA is effective. Thus, McKee was an employee of the State pursuant to the IGA at the time of his death.

C.    Wilful Misconduct

**¶16**        Appellant argues the State's actions rose to the level of wilful misconduct, and therefore her claim is not subject to the exclusive remedy provisions of workers' compensation pursuant to A.R.S. § 23-1022(A).  *See* Ariz. Const., art. XVIII, § 8.

**¶17**        Wilful misconduct is defined as "an act done knowingly and purposely with the direct object of injuring another."  A.R.S. § 23-1022(B). The courts have defined four elements that must be present to maintain a wilful misconduct action:

> (1) the employer's wilful misconduct must have been the cause of the employee's injury,
>
> (2) the wilful misconduct must have been "an act done . . . knowingly and purposely with the direct object of injuring another,"
>
> (3) the act that caused the injury must have been the personal act of the employer, and
>
> (4) the act must have reflected "a wilful disregard of the life, limb or bodily safety of employees."

*Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, 269, ¶ 6 (App. 2001) (*quoting* Ariz. Const. art. XVIII, § 8).

**¶18**        Thus, wilful misconduct requires proof of deliberate, intentional misconduct; "[e]ven gross negligence or wantonness amounting to gross negligence does not constitute a 'willful act' under this definition; the negligence or wantonness must be accompanied by the intent to inflict injury upon another."  *Diaz*, 190 Ariz. at 551 (*citing Serna v. Statewide Contractors, Inc.,* 6 Ariz. App. 12, 15 (1967).  There must be "deliberate intention as distinguished from some kind of intention presumed from gross negligence."  *Serna*, 6 Ariz. App. at 16.

**¶19**        Even assuming all facts alleged in Appellant's complaint are true, Appellant fails to allege defendants intended to cause the death of McKee.  *Republic Nat. Bank of New York v. Pima Cty.*, 200 Ariz. 199, 201, ¶ 2 (App. 2001).   The complaint alleges a series of negligent and grossly negligent acts that, if proven, culminated in the deaths of the Granite Mountain Hotshot crew; however, it does not allege these acts were done knowingly and purposely with the direct object of injuring the firefighters.

*See Serna*, 6 Ariz. App. at 16 (recognizing that the death of the decedent was the direct result of refusal to follow safety recommendations of inspectors but finding no wilful misconduct). Specifically, Appellant argues the actions of the division supervisor and an air tactical supervisor in leaving their posts was a dereliction of duty causing McKee's death. However, Appellant does not allege that either of the supervisors did so with the deliberate intention of harming McKee or any member of the Granite Mountain Hotshot crew.

¶20        Thus, as a matter of law, Appellant's complaint does not allege that defendants acted with the requisite intent to constitute wilful misconduct. *See Fid. Sec. Life Ins. Co. v. State, Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998) (affirming the dismissal of a complaint if "satisfied as a matter of law that plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof").

          D.    Waiver

¶21        Appellant reasons that because she is not eligible to receive McKee's death benefits under workers' compensation, she is not bound by her son's election to receive workers' compensation benefits. In support of this position, she reads A.R.S. § 23-1024, which states that an employee who institutes a proceeding against his employer waives any right to compensation, to indicate that a party who cannot receive compensation cannot waive the right to sue. Thus, she concludes that because she could not waive the right to sue, she should be permitted to maintain a wrongful death action against the State.

¶22        Appellant's argument is contrary to established law. In *Diaz*, the decedent's parents, who were nondependents and ineligible to receive workers' compensation benefits, argued they could not be bound by their son's election. *Id.*, at 548. The court rejected this argument, and held that an employee's election of workers' compensation benefits "binds not only the employee's dependents, but the employee's nondependent parents as well." *Id.*, at 550-51. The court reasoned that a wrongful death action "must still come within the terms of the wrongful death statute," and the decedent's parents were "subject to the same defenses as could have been asserted against the decedent, had the decedent lived and brought an action for personal injury." *Diaz*, 190 Ariz. at 549; *see Mariscal v. American Smelting & Refining Co.*, 113 Ariz. 148, 149-50 (1976) (holding that nondependent parents of deceased worker could not bring a wrongful death action against his company because "[t]he parents' right to sue were determined by the decedent's decision to accept the provisions of the [w]orkmen's

[c]ompensation [a]ct."). *Diaz* also reasoned that allowing the nondependent parents to avoid their son's election would undermine the State's "compelling interest in the preservation and integrity of its workers' compensation system." *Id.*, at 550.

**¶23** Accordingly, we conclude that Appellant's wrongful death claim is barred by operation of the exclusive remedy provision of the workers' compensation statutes.[3]

III.     Intentional Infliction of Emotional Distress

**¶24** The complaint alleges two factual bases for Appellant's intentional infliction of emotional distress claim. The first is that the defendants' reckless and negligent actions led to McKee's death which resulted in severe emotional harm to Appellant. The second is that the defendants negligently misrepresented facts regarding the Yarnell Fire incident in an effort to avoid blame for McKee's death which violated the public trust and caused emotional harm to Appellant. Both parties concede that these claims are factually related but separate and independent from Appellant's wrongful death claim; as a result, the exclusive remedy provisions of the workers' compensation statutes do not apply.

**¶25** The tort of intentional infliction of emotional distress allows recovery where (1) the conduct by the defendant is "extreme" and "outrageous"; (2) "the defendant either intend[s] to cause emotional distress or recklessly disregard[s] the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress occur[s] as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987); *Cont'l Life & Acc. Co. v. Songer*, 124 Ariz. 294, 304–05 (App. 1979). For one to recover for intentional infliction of emotional distress arising from death or injury to a family member, the plaintiff must allege she was present at the time of the extreme and outrageous conduct. Restatement (Second) of Torts § 46(2) & cmt. l (limiting liability for intentional infliction of emotional distress to plaintiffs that are present at the time of the conduct "as distinguished from those who discover later what has occurred"); *see also Ford v. Revlon*, 153 Ariz. at 43 (stating that Arizona follows the elements set out in Restatement (Second) of Torts).

---

[3]     Because we conclude that the exclusive remedy of the workers' compensation statutes applies to bar Appellant's wrongful death action, we do not address whether the common-law firefighter's rule would also bar Appellant's claim.

¶26        Appellant has not alleged sufficient grounds for an intentional infliction of emotional distress claim. Specifically, Appellant has failed to allege that she was present at the time of the allegedly extreme and outrageous conduct leading to her son's death, or that any of defendants' conduct was directed at her. We find no error.

IV.    Nonjural Entity

¶27        Appellant argues the trial court erroneously concluded the State Forestry Division was a nonjural entity when it dismissed her claims against that party. Appellant reasons that compliance with the notice of claim statute, A.R.S. § 12-821.01, gave rise to her ability to sue the State Forestry Division.

¶28        "Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Cty.*, 224 Ariz. 481, 487, ¶ 12 (App. 2010). "Thus, a governmental entity may be sued only if the legislature has so provided." *Id.* The legislature will so provide in plain language in the entity's enabling statutes. *See, e.g.*, A.R.S. § 38-882(D) ("The corrections officer retirement plan is a jural entity that may sue and be sued."); A.R.S. § 23-106(A) ("The [Industrial] commission may, in its name, sue and be sued.").

¶29        Here, there is no provision in the State Forestry Division enabling statute stating that it may sue or be sued. *See* A.R.S. §§ 37-1301, -1306. As a result, the State Forestry Division is a nonjural entity.

¶30        Additionally, the notice of claim statute does not, as Appellant contends, contain language suggesting its purpose is to confer the power to sue and be sued on a nonjural entity. When a plaintiff has a claim against a public entity, the notice of claim statute requires the plaintiff to file notice with the public entity stating a factual basis and a settlement amount for the claim prior to filing the cause of action. A.R.S. § 12-821.01. However, the purpose of the notice of claim statute is limited to providing "the government entity with an opportunity to investigate the claim, assess its potential liability, reach a settlement prior to litigation, budget and plan." *Havasupai Tribe of Havasupai Reservation v. Ariz. Bd. of Regents*, 220 Ariz. 214, 223, ¶ 30 (App. 2008).

¶31        Finally, we must construe the notice of claim statute in harmony with the enabling statutes for the State Forestry Division. *Midland Risk Mgmt. Co. v. Watford*, 179 Ariz. 168, 171 (App. 1994) ("It is a fundamental rule of statutory construction that courts will construe conflicting statutes in harmony when possible."). Here, the more specific

statute is the enabling statute for the State Forestry Division, while the notice of claim statute is a general statute that applies to all claims against public entities; as a result, the enabling statute controls. *Watford*, 179 Ariz. at 171. The logical prerequisite to having a cause of action against a public entity is that the entity has the power to sue and be sued. *See Braillard*, 224 Ariz. at 487, ¶ 12. Thus, in instances where a nonjural entity has been served a notice of claim, the more specific enabling statutes of the agency will control regarding the question of whether the entity has the power to sue or be sued. In this case, the State Forestry Division remains a nonjural entity regardless of Appellant's compliance with A.R.S. § 12-821.01. The superior court correctly dismissed Appellant's claims against the State Forestry Division.

**CONCLUSION**

¶**32** For the reasons discussed above, we affirm the superior court's order dismissing Appellant's complaint.

