Honorable Rosemary Márquez, United States District Judge
Pending before the Court is Defendants' Partial Motion to Dismiss. (Doc. 16.) For the following reasons, the Motion is denied.
I. Background
The First Amended Complaint contains the following allegations: at all relevant times, Plaintiff Deena Stoker was covered under a group long-term disability ("LTD") insurance plan issued by Defendant Hartford Life and Accident Insurance Company ("Hartford") and governed by the Employee Retirement Income Security Act ("ERISA"). (Doc. 11, ¶¶ 5, 8.) Plaintiff became disabled in 2009 due to multiple psychiatric conditions following the passing of her only child. (Id. ¶ 12.) Plaintiff filed a claim for LTD benefits, which Hartford approved. (Id. ¶ 13.) Hartford paid Plaintiff LTD benefits for twenty-four months based on a finding that she was unable to perform the duties of her "Own Job," and for several years thereafter based on a finding that she was unable to perform the duties of "Any Job." (Id. ¶¶ 14-15.) During this period, Plaintiff was awarded Social Security Disability Income due to her disabling psychiatric conditions, and Hartford considered offering Plaintiff a lump sum settlement, which it does only when it believes the claimant is totally and permanently disabled. (Id. ¶¶ 16-20.)
In June 2017, Hartford requested that Plaintiff's attending psychiatrist, Dr. Dawn Gunter, complete an "Attending Physician's Statement - Progress Report" ("APS") regarding Plaintiff's disability. (Id. ¶ 23.) Dr. Gunter completed and faxed the APS to Hartford on June 7, 2017. (Id. ¶ 24.) In the APS, Dr. Gunter reported that Plaintiff's condition was "unchanged" and that Plaintiff was "currently unable to work due to a severe depression and co-morbid panic disorder." (Id. ¶¶ 25-27.)
In August 2017, Hartford sent Dr. Gunter a letter containing several questions. (Id. ¶ 28.) On September 27, 2017, Dr. Gunter responded that although Plaintiff had periods where she felt better, Plaintiff had not yet returned to baseline functioning or demonstrated "continuous stability," and Plaintiff's diagnoses of major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder made her unable to resume work. (Id. )
In a report dated September 27, 2017, a psychiatrist retained by Hartford, Dr. Christina Conciatori-Vaglica, opined that Plaintiff had no psychiatric restrictions or limitations that would impede her ability to work. (Id. ¶ 29.) Dr. Conciatori-Vaglica did not examine Plaintiff, but instead based her opinion on a paper-only review that did not address Dr. Gunter's June 2017 APS or September 2017 responses to Hartford's questions. (Id. ¶¶ 30-31.) Dr. Conciatori-Vaglica disagreed with Dr. Gunter's psychiatric *896 restrictions because there was subjective evidence of improvement in symptoms during Plaintiff's medical appointments, and there was no "objective evidence" of symptoms that would indicate "a severe, incapacitating psychiatric impairment." (Id. ¶ 32.) The LTD plan requires neither "objective evidence" nor "a severe, incapacitating psychiatric impairment" to support a disability claim. (Id. ¶¶ 33-34.)
On October 17, 2017, Hartford terminated Plaintiff's LTD benefits based solely on the opinion of Dr. Conciatori-Vaglica. (Id. ¶¶ 35-36.) In the termination letter, Hartford falsely claimed that, in reaching its decision, "[a]ll the information in your file was reviewed as a whole." (Id. ¶ 37.) In February 2018, Plaintiff decompensated, attempted suicide by overdosing on prescription medications, and was committed for inpatient psychiatric care. (Id. ¶ 42.) These events were proximately caused by Hartford's breaches of its fiduciary obligations to Plaintiff and resulted in damages separate and distinct from the loss of LTD benefits. (Id. ¶¶ 43-44.)
On April 30, 2018, Plaintiff timely appealed Hartford's decision to terminate her LTD benefits. (Id. ¶ 45.) Plaintiff included in her appeal a comprehensive psychometric evaluation by Dr. Hector Barillas, who opined that Plaintiff is unable to work in any full-time occupation. (Id. ¶ 47.) Plaintiff also included a letter from Dr. Gunter, who reiterated Plaintiff's diagnoses, opined "[t]o a reasonable degree of psychiatric certainty" that Plaintiff is unemployable, and criticized Hartford's decision to terminate benefits. (Id. ¶ 46.) Dr. Gunter also disputed Dr. Conciatori-Vaglica's opinion that Plaintiff is not disabled. (Id. ) Dr. Gunter pointed out that Dr. Conciatori-Vaglica did not examine Plaintiff; did not address the June 2017 APS or September 2017 responses to Hartford's questions; selectively quoted treatment notes suggesting Plaintiff had recovered and ignored information supporting Plaintiff's claim, which was especially egregious because Plaintiff was below baseline functioning even during the periods of improvement; and erroneously assumed that because Plaintiff does not have a brain injury, dementia, or psychosis, that she is fine. (Id. )
After receiving Plaintiff's appeal, Hartford sent Plaintiff's claim to Dr. Mohsin Qayyum, who had never examined Plaintiff, for another paper-only review. (Id. ¶¶ 48-49.) Dr. Qayyum opined that Plaintiff was not disabled from October 18, 2017, the day after Hartford terminated her benefits, until her February 2018 hospitalization. (Id. ¶ 50.) Dr. Qayyum discounted the findings expressed in Dr. Gunter's June 2017 APS and September 2017 responses to Hartford's questions. (Id. ¶ 51.) Dr. Qayyum claimed to have called Dr. Gunter's office three times and left messages "with the front desk," but his reported call times would have been after hours, and thus Dr. Qayyum could not have reached the front desk to leave a message. (Id. ¶¶ 54-59.) Dr. Gunter's office did not receive three messages from Dr. Qayyum. (Id. ¶ 60.)
By letter dated June 13, 2018, Hartford upheld its decision terminating Plaintiff's benefits. (Id. ¶ 61.) The decision was based on the opinions of Dr. Qayyum. (Id. ) On July 6, 2018, Plaintiff submitted a second letter from Dr. Gunter, responding to Dr. Qayyum's review. (Id. ¶ 62.) Dr. Gunter reiterated her opinion that Plaintiff is unemployable and expressed outrage over Hartford's decision to terminate benefits based on the opinions of non-examining physicians. (Id. ¶ 63.) Dr. Gunter planned to recommend that Plaintiff report both Dr. Conciatori-Vaglica and Dr. Qayyum to their respective medical boards for malpractice and that Plaintiff report Hartford *897 to the Arizona insurance department. (Id. ) In a cover letter sent with Dr. Gunter's letter, Plaintiff noted that Hartford had a fiduciary obligation to carefully consider Dr. Gunter's letter. (Id. ¶ 65.)
By letter dated July 11, 2018, Hartford refused to consider Dr. Gunter's response to Dr. Qayyum's review because there are no provisions for additional appeals or reopening the administrative record after a final appeal decision. (Id. ¶ 66.) On July 17, 2018, Plaintiff sent Dr. Gunter's response to Hartford a second time, noting that Hartford had a fiduciary obligation to discharge its duties in the interest of plan beneficiaries and that failure to consider Dr. Gunter's response was a violation of ERISA. (Id. ¶¶ 67-70.) Hartford again refused to consider Dr. Gunter's letter. (Id. ¶ 71.)
Throughout the benefits-determination process, Plaintiff's correspondence was ignored. (Id. ¶ 134.) Additionally, Plaintiff was repeatedly and implicitly accused of lying about her disability and symptoms; subjected to rude, dismissive, irritated, and impatient Hartford employees despite her fragile psychiatric state; denied timely, accurate, and relevant information about her disability claim; and provided misstatements and misrepresentations concerning her medical records and own statements. (Id. ¶ 134.)
Based on the foregoing allegations, Plaintiff brings several claims. At issue here is her claim for intentional infliction of emotional distress ("IIED claim").
II. Standard of Review
Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6)"can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't , 901 F.2d 696, 699 (9th Cir. 1988), as amended . To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). In other words, the complaint's "non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv. , 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.
A court evaluating a motion to dismiss must view the allegations of a complaint "in the light most favorable to the plaintiff." Abramson v. Brownstein , 897 F.2d 389, 391 (9th Cir. 1990). All well-pleaded factual allegations of the complaint must be accepted as true, although the same does not apply to legal conclusions couched as factual allegations. Iqbal , 556 U.S. at 678-79, 129 S.Ct. 1937.
III. Discussion
A. ERISA Preemption
"There are two strands of ERISA preemption: (1) express preemption under ERISA § 514(a), 29 U.S.C. § 1144(a) ; and (2) preemption due to a conflict with ERISA's exclusive remedial scheme set forth in ERISA § 502(a), 29 U.S.C. § 1132(a)."
*898 Fossen v. Blue Cross & Blue Shield of Mont., Inc. , 660 F.3d 1102, 1107 (9th Cir. 2011) (internal quotation marks and brackets omitted) (citing Paulsen v. CNF Inc. , 559 F.3d 1061, 1081 (9th Cir. 2009) ). The second strand is relevant here. Because "a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive," Aetna Health Inc. v. Davila , 542 U.S. 200, 214 n.4, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), "[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort," Dishman v. UNUM Life Insurance Co. of America , 269 F.3d 974, 983 (9th Cir. 2001). ERISA's civil enforcement provision preempts state-law claims if "(1) the litigant could have brought the claim under ERISA's civil enforcement provision, and (2) the claims have no basis in an independent legal duty." DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc. , 852 F.3d 868, 878 (9th Cir. 2017) (citing Davila , 542 U.S. at 210, 124 S.Ct. 2488 ).
Hartford's challenge to the IIED claim will be denied because, at the present stage, it appears that the claim "relies on a legal duty that arises independently of ERISA." Marin Gen. Hosp. v. Modesto & Empire Traction Co. , 581 F.3d 941, 950 (9th Cir. 2009). Plaintiff alleges, among other things, that Hartford ignored her correspondence; repeatedly and implicitly accused her of lying about her disability and committing insurance fraud; misstated and misrepresented her medical records and statements to her; misled her into believing that her benefits would continue, which led her to stop gathering additional information pertinent to the benefits determination; and deliberately or recklessly terminated her benefits near the ten-year anniversary of her child's death. Hartford allegedly engaged in this conduct while knowing of Plaintiff's fragile psychiatric state. Accepting Plaintiff's allegations as true, such conduct was done with intent to cause her distress and is thus only peripherally connected to Hartford's plan administration. Therefore, Plaintiff could not bring a claim for such conduct under ERISA's civil enforcement provision. Cf. Kresich v. Metro. Life Ins. Co. , No. CV 15-05801-MEJ, 2016 WL 1298970, at *4, 7 (N.D. Cal. Apr. 4, 2016) (finding IIED claim not preempted where insurer allegedly ignored insured's correspondence, intimidated insured into multiple medical examinations, accused insured of lying about disability, and purposely misstated and misrepresented statements made by insured and insured's physicians, all while knowing of insured's "weak emotional state"); Sarkisyan v. CIGNA Healthcare of Cal., Inc. , 613 F.Supp.2d 1199, 1206, 1208-09 (C.D. Cal. 2009) (finding IIED claim not preempted where, on one occasion, insurer's employees "verbally abused" insured and made a "lewd hand gesture"); Kirkendall v. Zurich Am. Ins. Co. , No. CV 08-01283-CJC (RNBx), 2009 WL 10675211, at *1-2 (C.D. Cal. Feb. 5, 2009) (finding IIED claim not preempted where insurer maliciously sent letter to wife describing gruesome death of husband).
Although the conduct alleged by Plaintiff would not have occurred but for Hartford's handling of her ERISA benefits claim, such a connection is not sufficient by itself to warrant preemption. See Dishman , 269 F.3d at 984 (explaining that tortious conduct by a claims investigator (e.g., tapping the claimant's phone) would not be shielded from tort liability merely because it was done in furtherance of plan administration). Critically, her IIED claim would remain regardless of whether her benefits are reinstated. See id. at 983 (explaining that preemption applies to IIED claims that are "tantamount to compelling benefits"). This finding distinguishes Plaintiff's *899 case from Hartford's cited authority, which involves the preemption of tort claims that were clearly based on the denial of benefits. See, e.g., Johnson v. Lucent Techs. Inc. , 669 Fed. App'x 406, 408 (9th Cir. 2016) (finding preemption where the "gravamen of [the plaintiff's] IIED claim is that [the employer's] 'cessation of benefits constituted an intentional infliction of emotional distress.' "); Tingey v. Pixley-Richards West, Inc. , 953 F.2d 1124, 1131 (9th Cir. 1992) (finding preemption where IIED claim "spr[ang] from the handling and disposition of [the plaintiff's] medical benefits insurance claim"); Johnson v. Dist. 2 Marine Eng'rs Beneficial Ass'n-Associated Mar. Officers, Med. Plan. , 857 F.2d 514, 515, 517-18 (9th Cir. 1988) (per curiam) (finding preemption where IIED claim was based on insurer's denial of coverage for liver transplant procedure). As alleged, the hostile, oppressive, or abusive conduct by Hartford implicates duties outside of ERISA and thus is not shielded by preemption. Hartford's preemption challenge will thus be denied without prejudice.
B. Extreme & Outrageous Conduct
Hartford alternatively argues that Plaintiff's claim fails under Arizona law because its allegedly abusive conduct is not sufficiently "outrageous." The Court disagrees.
An IIED claim under Arizona law requires proof that (1) the defendant engaged in "extreme" and "outrageous" conduct (2) with intent to cause emotional distress or reckless disregard that emotional distress will occur, and (3) the plaintiff suffers severe emotional distress. McKee v. State , 241 Ariz. 377, 388 P.3d 14, 20 (Ariz. Ct. App. 2016) (citations omitted). "To recover for this tort, the plaintiff must show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " Johnson v. McDonald , 197 Ariz. 155, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999) (quoting Cluff v. Farmers Ins. Exch. , 10 Ariz.App. 560, 460 P.2d 666, 668 (1969) ). Courts should not dismiss IIED claims "if reasonable minds could differ about whether the conduct is sufficiently outrageous[.]" Id.
As a starting point, Plaintiff contends that she was particularly susceptible to emotional distress. This contention is supported by many factual allegations, including that Plaintiff was diagnosed with major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and insomnia, and that she suffered from neuropathy and chronic back pain. Plaintiff also alleges that Hartford was aware of her fragile psychiatric state. Accepting these allegations as true, whether Hartford's alleged conduct is sufficiently outrageous must be determined in view of Plaintiff's weakened emotional state. In other words, Hartford's conduct may be sufficiently outrageous as it pertains to Plaintiff, even if it would not offend a person of ordinary sensibilities. See Mintz v. Bell Atl. Sys. Leasing Int'l Inc. , 183 Ariz. 550, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) ("[A] relevant factor in determining outrageousness is defendant's knowledge that plaintiff is particularly susceptible to emotional distress.").
As described above, Plaintiff alleges that Hartford, through its employees, was rude, dismissive, irritated, and impatient; repeatedly and implicitly accused her of lying about her disability and committing insurance fraud; misstated and misrepresented her medical records and statements; ignored her correspondence; misled her into believing that her benefits would continue; and deliberately or recklessly terminated her benefits near the ten-year anniversary of her child's death. Taken as *900 true, Plaintiff was needlessly subjected to abusive and hostile behavior while suffering myriad psychiatric and physical symptoms. Although such conduct may not be sufficiently outrageous if directed at another person, viewed through the lens of Plaintiff's weakened emotional state, the Court finds that Hartford's alleged conduct can be classified as outrageous and extreme. At the least, reasonable minds can disagree as to whether Hartford's conduct is outrageous. This precludes the granting of Defendant's Motion to Dismiss.
Hartford compares this case to Haney v. ACE American Insurance Co. , No. CV-13-02429-PHX-DGC, 2014 WL 1230503, at *2-3 (D. Ariz. Mar. 25, 2014), where the district court granted a motion to dismiss an IIED claim relating to a worker's compensation claim. Haney is distinguishable for at least two reasons. First, the Haney plaintiff based her IIED claim entirely on the insurer's refusal to timely pay insurance benefits. Id. at *2. Second, the district court did not specially evaluate the defendant's conduct due to a unique vulnerability of the plaintiff. See id. at *2-3. The IIED claim in this case, in contrast, does not appear to be based on the denial of benefits. Furthermore, because the Court must accept as true Plaintiff's allegation that she was especially susceptible to emotional distress, Hartford's conduct cannot be examined in the same manner as the Haney defendant's.
Accordingly,
IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 16) is denied .
IT IS FURTHER ORDERED that, within 10 days of the date this Order is docketed, Defendant shall file its answer to the First Amended Complaint.