NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IHOR CHOPKO, *Plaintiff/Appellant*,

*v.*

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,
*Defendant/Appellee*.

No. 1 CA-CV 25-0693

FILED 06-15-2026

Appeal from the Superior Court in Maricopa County
Nos.  CV2024-011288
CV2024-022404
(Consolidated)
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Ihor Chopko, Phoenix
*Plaintiff/Appellant*

Klinedinst PC, Phoenix
By C. Nicole Pelcic
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

---

**K I L E Y**, Judge:

**¶1** Ihor Chopko appeals the dismissal with prejudice of his complaint against Newrez LLC dba Shellpoint Mortgage Servicing ("Shellpoint"). Because Chopko has shown no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** We presume the facts alleged in the complaint are true. *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998).

**¶3** In 2006, Chopko purchased a residence in Phoenix (the "Property"), funding the purchase with a loan that he refinanced a year later.

**¶4** In October 2023, Chopko entered into a contract to sell the Property. An appraisal performed in connection with the prospective sale reflected that an unpermitted, and therefore illegal, addition had been built onto the residence.[1] The buyer backed out of the contract.

**¶5** In December 2023, Shellpoint assumed responsibility as servicer of Chopko's mortgage loan.

**¶6** Early the next year, Chopko sued a title insurance company for losses purportedly resulting from the failure of the sale of the Property. His claims in that case were dismissed under Arizona Rule of Civil Procedure ("Rule") 12(b)(6), and the dismissal was affirmed on appeal. *See Chopko v. Fid. Nat'l Title Ins. Co.*, No. 1 CA-CV 25-0431, 2026 WL 208329 (Ariz. App. Jan. 27, 2026).

**¶7** Chopko also sued Shellpoint, asserting claims for breach of contract, fraud, and negligent misrepresentation that were all based on Chopko's contention that Shellpoint failed to disclose to him that the

---

[1] Although the record is not clear, it appears that the addition was built to enclose what had originally been an outdoor patio.

addition to the residence was "not up to code" and that leaving the structure in place will "require[] a variance from the City of Phoenix." Chopko alleged that Shellpoint was a "mortgage servicing company" which, he contended, had a "contractual[] obligat[ion]" to "provide accurate information regarding the Property's title" and "a duty to disclose material facts that would have been relevant to [his] decision to purchase and refinance the Property." He would not have purchased the Property, he alleged, had Shellpoint disclosed to him the "defects and encumbrances . . . affect[ing] [the Property's] value or marketability." Accordingly, he concluded, Shellpoint was liable for his damages, including his losses from the failure of the prospective sale and the future costs of the "corrective measures necessary" to "bring[] the structures up to code or obtain[] the necessary variance."

¶8         In its answer, Shellpoint admitted that it was a mortgage servicing company that "collects payments on behalf of its clients[,]" but denied the substantive allegations of Chopko's complaint.

¶9         Shellpoint later moved to dismiss under Rule 12(b)(6), asserting that the allegations in Chopko's complaint, accepted as true, did not state a claim for relief. Shellpoint noted, first, that although the complaint alleges the existence of "a contractual agreement" in conclusory terms, Chopko alleged no facts to indicate that he had a contractual relationship with Shellpoint. Likewise, Shellpoint argued, Chopko alleged no facts to indicate that Shellpoint owed him the "duty of care" necessary to support his misrepresentation claims. Further, Shellpoint asserted, the complaint alleges no facts to indicate that Shellpoint serviced the loan, or had any other connection to the Property, when Chopko bought the Property in 2006 or when he refinanced it a year later. Accordingly, Shellpoint argued, "it could not have made any representation that would have induced [Chopko's] reliance in deciding whether" to buy or refinance the Property.

¶10        In his response, Chopko asserted that the "illegal structure" on the Property created a "title defect" that Shellpoint "failed to disclose, cure, or even address." He did not, however, deny Shellpoint's assertion that it did not become the mortgage servicer until after he learned that the addition to the residence was unpermitted.

¶11        Chopko went on to make a number of allegations about the manner in which Shellpoint handled his account after taking over as loan servicer. According to Chopko, Shellpoint "engaged in deceptive business practices" by adding "unauthorized fees" and other charges to his account

"without serving any default notice, and without seeking judicial approval." The result, he argued, has been the improper "inflation" of his "mortgage balance." He concluded his response by asking the superior court to "vacate all unauthorized charges" and "negate the lien balance."

**¶12**　　　Chopko separately moved to amend his complaint to add a quiet title claim to confirm his status as "the sole lawful owner" of the Property in order to protect against "foreclosure" based on the "accrual" of "unauthorized" fees.

**¶13**　　　The court granted Shellpoint's motion to dismiss with prejudice, finding that Chopko's complaint "fail[ed] to allege the existence of a contract" between the parties or that "Shellpoint was . . . a participant in his purchase of the [P]roperty in 2006." The court noted that in his response to the motion to dismiss, Chopko "dispute[d] [Shellpoint's] accounting methods" and alleged that "Shellpoint has used illegal collection methods" since it "began servicing the mortgage debt[,]" but found that those allegations "are not relevant to any of the claims raised in his [c]omplaint."

**¶14**　　　Shortly thereafter, the court denied Chopko's motion to amend his complaint to add a quiet title claim, determining that the amendment would be "futile." The court entered judgment in July 2025. Chopko timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶15**　　　Chopko argues that the court erred in dismissing his complaint. We review the dismissal order *de novo*. *McKee v. State*, 241 Ariz. 377, 380, ¶ 5 (App. 2016).

**¶16**　　　A defendant is entitled to dismissal under Rule 12(b)(6) if the complaint "fail[s] to state a claim under which relief can be granted[.]" Ariz. R. Civ. P. 12(b)(6). "When adjudicating a Rule 12(b)(6) motion[,] . . . [c]ourts must . . . assume the truth of well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). "[M]ere conclusory statements are insufficient." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012). The court will not "speculate about hypothetical facts that might entitle the plaintiff to relief." *Cullen*, 218 Ariz. at 420, ¶ 14. Although we accept well-pled facts as true, "we do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts,

or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Arizona*, 211 Ariz. 386, 389, ¶ 4 (App. 2005).

¶17 In dismissing the contract claim, the superior court found that the complaint alleged no facts to support the existence of a contractual relationship between Chopko and Shellpoint. The record supports this determination. Although Chopko's complaint alleged that he and Shellpoint "entered into a contractual agreement," the court was not required to accept the truth of this conclusory allegation when resolving Shellpoint's Rule 12(b)(6) motion. *See id.* The complaint contains no factual allegations to suggest that a contract existed between Chopko and Shellpoint. Ample case law supports the court's implicit determination that Shellpoint's role as mortgage loan servicer did not, without more, give rise to a contractual relationship with Chopko. *See Galope v. Deutsche Bank Nat'l Tr. Co.*, 666 Fed. App'x 671, 674 (9th Cir. 2016) ("[T]here is no contractual relationship between a mortgagor and a loan servicer."); *Edwards v. Ocwen Loan Servicing, LLC*, 24 F.Supp.3d 21, 28 (D.D.C. 2014) ("Judges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract" and citing cases); *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015) ("A significant majority of courts have concluded that loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability" and citing cases).

¶18 In his briefing on appeal, Chopko does not address the allegations of his complaint that Shellpoint breached contractual disclosure duties to him in 2006 and 2007. Instead, he challenges the manner in which Shellpoint has handled his account since it took over as loan servicer in 2023. According to Chopko, Shellpoint owed "servicing duties once [it] assume[d]" responsibility for "[a]dministration of the loan." Shellpoint breached this duty, he asserts, by imposing "unauthorized fees," "disabl[ing]" his "online access" to account records, and "misappl[ying]" his "payments" to "[m]anufacture" grounds to declare him in "default" of his mortgage obligations. "[I]f left uncorrected," Chopko warns, the dismissal order will "create a class of immune successor servicers" emboldened to "misapply[] payments" and "impos[e] unauthorized fees" on mortgagors.

¶19 Chopko's assertions about the purportedly improper manner in which Shellpoint administered his account after taking over as loan servicer in 2023 are irrelevant to the breach of contract allegations in his complaint, *i.e.*, that Shellpoint breached contractual disclosure obligations

in 2006 and 2007. Those assertions, therefore, do not support his appeal from the superior court's dismissal of his contract claim.

¶20 Similarly, the fraud and negligent misrepresentation claims that Chopko alleged in his complaint were based on Chopko's contention that Shellpoint failed to disclose the existence of an unpermitted addition before he bought and refinanced the Property. The viability of such claims depended, *inter alia*, on the existence of a duty owed by Shellpoint to Chopko. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, n. 22 (2002) (noting that a claim of fraud for nondisclosure is not actionable unless the defendant "is under a duty . . . to disclose the matter in question," (citing Restatement (Second) of Torts § 551)); *Hammer Homes, LLC v. City of Phoenix*, 256 Ariz. 526, 528, ¶ 11 (App. 2023) ("To state a claim [for negligent misrepresentation], the plaintiff must allege, among other elements, that the defendant owed a duty of care."). In his briefing on appeal, Chopko points to nothing in the record to suggest that Shellpoint owed him any disclosure duty when he purchased and then refinanced the Property. Indeed, he cites no authority for the proposition that a loan servicer owes any duty to discover and disclose physical defects or unpermitted improvements. Because Chopko's allegations about Shellpoint's conduct in administering his account do nothing to support the "failure to disclose" tort claims alleged in the complaint, the superior court did not err in dismissing those claims under Rule 12(b)(6).

¶21 If Chopko sought to assert contract or tort claims against Shellpoint based on conduct wholly unrelated to the allegations of the complaint, he should have moved for leave to amend. Although he moved to amend the complaint to add a quiet title claim, he never sought to add a claim arising out of Shellpoint's purported misconduct in handling his account. Because Chopko does not identify any well-pled factual allegations in the complaint to support its claims arising out of Shellpoint's purported breach of its disclosure obligations in 2006 and 2007, and because he never sought leave to amend his complaint to add claims arising out of Shellpoint's post-2023 handling of his account, the superior court did not err in dismissing his complaint with prejudice under Rule 12(b)(6). *See Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶ 27 (App. 1999) (affirming dismissal of complaint without leave to amend in part because plaintiff "never sought leave to amend").

## CONCLUSION

**¶22** We affirm. As the prevailing party on appeal, Shellpoint is entitled to recover costs upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR